UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-Civ-22973-SCOLA/BANDSTRA

FLSA COLLECTIVE ACTION

HECTOR LAOS, individually and
on behalf of other similarly situated,

    Plaintiff,

vs.

GRAND PRIZE MOTORS, INC., *d/b/a*
"Grand Prize Lincoln-Mercury" and "Grand
Prize Chevrolet," GRAND PRIZE LINCOLN-
MERCURY, LLC, *d/b/a* "Grand Prize
Lincoln-Mercury" and "Grand Prize
Chevrolet," and RALPH W. SIFFORD,

    Defendants.
_____/

## ORDER GRANTING CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION

THIS CASE is before the Court upon the Plaintiff's Motion For Conditional Certification of Collective Action Under the FLSA (ECF No. 27). For the reasons explained in this Order, the Plaintiff's Motion is granted, and a collective action is conditionally certified.

### I.   BACKGROUND

This is a case seeking unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (2006) ("FLSA"). The Plaintiff, Hector Laos, worked as an automobile salesperson at a dealership known as "Grand Prize Lincoln-Mercury." Laos alleges that "Grand Prize Lincoln-Mercury" and "Grand Prize Chevrolet" were owned and operated together, by Defendant Ralph W. Sifford, as a single contiguous car lot under the banner of "Grand Prize Motors" or "Grand Prize Auto Mall." According to Laos, the Defendants systematically underpaid him and the other salespersons who worked at the Auto Mall. Laos has now moved for conditional certification of a collective action under the FLSA. In addition to seeking conditional certification, Laos also requests that the claims of other opt-in plaintiffs be equitably tolled from the date this lawsuit was filed. The Defendants oppose both requests.

## II. LEGAL STANDARDS

The FLSA permits an action to be brought for unpaid minimum wages, or unpaid overtime compensation (and an additional equal amount as liquidated damages) "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (2006). This is known as a collective action under the FLSA. A district court has the authority to permit a notice of an FLSA collective action to be sent to similarly situated potential opt-in class members. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989); *Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001).[1] Before a court conditionally certifies a case as a collective action and permits notice to be sent, it must satisfy itself that there are other similarly situated employees of the employer who desire to opt-in. *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

The Eleventh Circuit Court of Appeals has endorsed a two-stage procedure to determine whether it is appropriate to maintain an FLSA case as a collective action. *Hipp*, 252 F.3d at 1216-19. In the first stage, a court should evaluate the case under a fairly lenient standard, based upon the pleadings and affidavits. Once the action is conditionally certified, notice is provided to putative class members, and discovery proceeds. Once discovery is completed, at the second stage of the proceedings, the defendant may file a motion to decertify the class, if appropriate, based upon the individualized nature of the plaintiffs' claims. *Id.* At both stages, the plaintiff is required to demonstrate some reasonable basis for the claim of class-wide discrimination, and that there are similarly situated class members who desire to join the lawsuit. The difference between the two stages lies primarily in the scrutiny that will be applied. At the second stage, the court will have much more information on which to base a determination of whether a claimant is similarly situated, and a plaintiff will be required to submit "detailed allegations supported by affidavits which successfully engage defendant ['s] affidavits to the contrary." *Id.* at 1219.

The requirement that members of the collective action under 29 U.S.C. § 216(b) be "similarly situated" is a flexible one, and is different from that required under Federal Rules of Civil Procedure 20 (joinder), 23 (class actions), and 42 (severance). *See Grayson v. K Mart*

---

[1] While both *Hoffman-La Roche, Inc.* and *Hipp* addressed collective actions brought under the Age Discrimination in Employment Act of 1967, that Act incorporates by reference the FLSA's collective action provision. *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1014 n.1 (11th Cir. 2007).

*Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).  "[T]he requirements for pursuing a §216(b) class action are independent of, and unrelated to, the requirements of a class action under Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 1096 n.12.  The factors to consider in determining whether the putative opt-in plaintiffs are similarly situated include: 1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographical location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; 5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.  *See Stone v. First Union Corp.*, 203 F.R.D. 532, 541-43 (S.D. Fla. 2001) (collecting cases which discuss the various factors used to determine "similarly situated" requirement).

### III. DISCUSSION

#### A. *The Plaintiff's Assertions & Evidentiary Support For Collective Action Certification*

Laos has submitted evidence supporting the allegations in his Complaint.  Specifically, Laos's evidence demonstrates a reasonable basis for the assertions that the named Defendants were all employers under the FLSA.  The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d) (2006).  This definition of employer includes "a corporate officer with operational control of a corporation's covered enterprise."  *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).

Here, Laos has presented testimony establishing that although he worked from the "Lincoln-Mercury" building, he was paid by "Grand Prize Motors, Inc."; that he and other salespersons were permitted to sell used automobiles from either the "Lincoln-Mercury" building or the "Chevrolet" building; that both buildings are situated on a single contiguous car lot, operating as an auto mall under the banner of "Grand Prize Motors" or "Grand Prize Auto Mall"; and that there is a single payroll department for salespersons working at both the "Lincoln-Mercury" building and the "Chevrolet" building. (Laos Decl. ¶¶ 8, 10, ECF No. 27-5; *see also* Reyes Decl. ¶ 8 and Damon Decl. ¶ 8, ECF Nos. 27-6 & 27-7.)  Laos has further provided testimony that Defendant Ralph W. Sifford operated and supervised both the "Lincoln-Mercury" and the "Chevrolet" dealerships. (Laos Decl. ¶ 10; *see also* Reyes Decl. ¶ 10 and Damon Decl. ¶ 10.)

Laos has also presented evidence to support his assertions that other salespersons working at "Grand Prize Motors" or "Grand Prize Auto Mall" are similarly situated. Specifically, Laos has explained, in great detail, the system for paying salespersons that was utilized by the Defendants. (Laos Decl. ¶¶ 3-7; *see also* Reyes Decl. ¶¶ 3-7 & Damon Decl. ¶¶ 3-7.) Laos has alleged that the result of the Defendants' systemic employee compensation practices was that Laos, and all other salespersons working for the Defendants, were consistently paid at a rate below the minimum wage rates required by federal law. Finally, the sworn declarations submitted by Laos support the assertions that other salespersons, who are either presently or formerly employed by the Defendants, are similarly situated, and further that at least some of these employees desire to opt-in to this lawsuit. (*See generally* Reyes Decl. & Damon Decl.) These declarations support Laos's assertions that putative opt-in plaintiffs had the same job title as Laos; that they worked at the same location as Laos; that they were subjected to the same policies and practices as Laos; and that those policies and practices were established in the same manner and by the same decision maker.

## B. *The Defendants' Arguments & Evidence Against Collective Action Certification*

The Defendants' first argument against conditional collective action certification is that the declarations presented by Laos in support of the motion are simply false. Specifically, the Defendants contend that Laos's declarations are completely wrong as to the assertions regarding the hours worked by Laos and other salespersons, and wrong as to the assertions that all of the named Defendants were employers of Laos and other salespersons. In support of these arguments, the Defendants have presented affidavits of Louis Izquierdo who is the authorized representative of "Grand Prize Lincoln-Mercury" and "Grand Prize Chevrolet," and of Ralph Sifford, who is the sole shareholder of "Grand Prize Chevrolet" which is the managing member of "Grand Prize Lincoln-Mercury." The affidavits generally challenge the factual assertions made by Laos's declarations regarding organizational structure, corporate control, and payroll policies and practices for the named Defendants.

At this stage of the case, all that a plaintiff needs to present is a "reasonable basis" to support a claim of class-wide discrimination. *Grayson*, 79 F.3d at 1097. A plaintiff can "meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination . . . supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal citations omitted). The Defendants' denials and counter-assertions do not change the

fact that Laos has presented detailed allegations, supported by affidavits, which provide a reasonable basis for liability against the Defendants on a class-wide basis.  A decision to conditionally certify a collective action under the FLSA is not a decision relating to liability against the Defendants.  It is a determination by the Court that the Plaintiff's allegations, if proven at trial, would support a basis for class-wide liability against the Defendants.  It is also a process for the Court to ensure that the Plaintiff has some evidentiary support to justify moving forward on a class-wide basis.  Once Laos has met his burden, the Defendants cannot negate his allegations and evidence by arguing an alternative view of the facts, or merely by contradicting Laos's evidence.  *See Grayson*, 79 F.3d at 1097.

The second argument presented by the Defendants is that neither Laos, nor the other two declarants who wish to opt-in to this lawsuit (Reyes and Damon) have standing to assert an employment claim against "Grand Prize Chevrolet" or Sifford, since neither were their employer. (Defs.' Resp. In Opp'n 15, ECF No. 40.)  As explained above, the FLSA takes an expansive view of who is considered an employer for purposes of liability under the FLSA.  29 U.S.C. § 203(d) (2006) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee.")  Laos's allegations, if proven, are sufficient to establish FLSA liability against the Defendants.  Further, Laos's evidence supports his detailed allegations.  Again, the Defendants' assertions to the contrary cannot undue Laos's allegations and evidentiary support – that is the function of a trial.

The Defendants also argue that there is no evidence that any other putative plaintiffs desire to opt-in to this collective action, despite the fact that Laos submitted executed Consent to Join forms from two former salespersons of "Grand Prize Motors," Richard Reyes and Bruce Damon. (Consents to Join, ECF Nos. 27-3 & 27-4.)  The Defendants' argument is predicated on the contention that Reyes and Damon lack standing because they were only employed by "Grand Prize Lincoln-Mercury" and not by the other named Defendants as well.  This argument fails for the same reasons that the Defendants' previously raised standing argument failed.  Laos has asserted sufficient detailed allegations, supported by record evidence, that the named Defendants were employers of all salespersons working at "Grand Prize Motors" or "Grand Prize Auto Mall."  Accordingly, Reyes's and Damon's Consent to Join forms demonstrate that there are at least two putative plaintiffs who desire to opt-in to this collective action.

The Defendants' final push against conditional certification is the argument that Laos's declarations should be stricken because they contain inadmissible hearsay. There are five assertions that the Defendants attack: (1) that "Grand Prize Chevrolet" (also referred to as "Grand Prize Motors") paid Laos's salary; (2) that "Grand Prize Lincoln-Mercury" and "Grand Prize Chevrolet" operated as one entity, *i.e.* a single "Auto Mall"; (3) the number of people employed by "Grand Prize Chevrolet," and the number of people employed by "Grand Prize Lincon-Mercury after he was no longer employed; (4) Sifford's role in the two companies; and (5) the belief that others will want to opt-in to this lawsuit.

Taking these evidentiary issues in turn, the fact that "Grand Prize Chevrolet" (also referred to as "Grand Prize Motors") paid Laos's salary is supported by Laos's explanations that his paycheck indicated that it was from "Grand Prize Motors," that he was authorized to sell used vehicles from either the "Lincoln-Mercury" building or the "Chevrolet" building, and that there is only one payroll department for both building, which is located in the "Chevrolet" building. The fact that the paycheck indicates "Grand Prize Motors" on it is not hearsay, because this evidence is being offered as an admission against a party-opponent. Fed. R. Civ. P. 801(d)(2). Additionally, the other facts stated in Laos's declaration provide a sufficient evidentiary basis to support the proposition that his salary was paid by "Grand Prize Chevrolet" (also referred to as "Grand Prize Motors").

Laos's assertion that "Grand Prize Lincoln-Mercury" and "Grand Prize Chevrolet" operated as one entity is supported by several facts about which Laos has sworn that he has personal knowledge. Namely, that both dealerships shared a single payroll department; that salespersons could sell used cars from either dealership; that both buildings were operated on a single contiguous car lot; and, that both were operated under the single banner of "Grand Prize Motors" or "Grand Prize Auto Mall." The Defendants argue that Laos's testimony on this point is inadmissible hearsay because his statements are based on the "out-of-court alleged conduct of these companies." (Defs.' Resp. In Opp'n 19, ECF No. 40.) A witness offering testimony on a subject must have "personal knowledge of the matter." Fed. R. Evid. 602. Personal knowledge is "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief on what someone else has said." *Blacks Law Dictionary* 951 (9th ed. 2009). While a witness is permitted testify as to what he or she observed or experienced, a witness may not ordinarily testify as to what he or she heard another person say – this is known as hearsay. Fed.

R. Evid. 801. The Defendants' assertion that Laos's testimony (that the two dealerships operated as a single "Auto Mall") is hearsay is incorrect. As the Defendants point out, this testimony is based on the Defendants' own conduct, and Laos's observation of that conduct. It is beyond peradventure that observation of an opposing party's conduct is not hearsay.

Similarly, Laos's statements about the number of salespersons working for the Defendants is not hearsay, because he has testified that he worked there and was in a position to personally observe the number of salespersons working in each building. His statements about the turnover rate of salespersons at each building can also be attributed to his personal observations while he worked for the Defendants. Laos's statements projecting the number of potentially affected salespersons based on the number of salespeople employed while he was there, and the turnover rate may be somewhat inexact. But, it is also basic math and the Court will evaluate this testimony accordingly.

The Defendants contend that Laos's assertion that Sifford operated and supervised both dealerships is "apparently premised upon [his] belief that he owns Grand Prize Chevrolet's stock." (Defs.' Resp. In Opp'n 19, ECF No. 40.) On this point, there is actually no need to rely on Laos's assertions, because Sifford's affidavit confirms that he owns all of the stock of "Grand Prize Chevrolet," which is the managing member of "Grand Prize Lincoln-Mercury." (Sifford Aff. ¶ 2, ECF No. 42.) More to the point, Sifford confirms Laos's assertions of operational control by explaining that, due to health issues, Sifford has increasingly "reduced [his] involvement in the day-to-day affairs of both dealerships." (Sifford Aff. ¶ 7.) This statement clearly suggests that Sifford is involved in the day-to-day affairs of both dealerships, and that in the past he was even more involved in the day-to-day operations.

The Defendants' final argument is that Laos's statement that other salespersons would want to opt-in to this lawsuit if they knew about it is speculative. Laos has presented the Court with two fellow salespersons who desire to opt-in. (Consents to Join, ECF Nos. 27-3 & 27-4.) This is sufficient for Laos to satisfy his burden at this stage of the case. *See Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (explaining that a court must simply conclude that there are other similarly situated employees who desire to opt-in to the lawsuit).

### C. *The Plaintiff's Argument For Equitable Tolling*

Laos requests an order expediting the notice and discovery processes relating to the collective action notification, or, alternatively, an order tolling the limitations period from the date this action was filed. (Pl.'s Mot. Conditional Certification 18, ECF No. 27.) Laos has not argued that the elements for equitable tolling have been met in this case. *See Downs v. McNeil*, 520 F.3d 1311, 1324 (11th Cir. 2008) ("a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way") (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). It would not be appropriate to equitably toll the claims of potential opt-in plaintiffs at this time.

## IV. CONCLUSION

Laos has met his burden of establishing, through detailed allegations and supporting evidence, that he and similarly situated salespersons were underpaid while working for the Defendants, and that some of these other salespersons wish to opt-in to this lawsuit. Having considered the motion, the record, and the relevant legal authorities, and for the reasons explained in this order, it is **ORDERED and ADJUDGED** that the Plaintiff's Motion For Conditional Certification of Collective Action Under the FLSA (ECF No. 27) is **GRANTED**, and the Defendants' Motion to Strike the Plaintiff's Declarations (ECF No. 43) is **DENIED**.

It is **FURTHER ORDERED** that the Plaintiff's request for expedited discovery is **GRANTED** as follows: <u>Within fifteen days of this Order,</u> the Defendants shall produce to the Plaintiff, a complete list of every salesperson who was (or is) employed as an automobile salesperson at either of the privately held automobile dealerships operated by Defendant Ralph W. Sifford under the fictitious names "Grand Prize Auto Mall" or "Grand Prize Motors", including those "dealerships" operating from the "Chevrolet Building" and/or the "Lincoln-Mercury Building" of the "Grand Prize Auto Mall" at any time between August 17, 2008 and the present. This list of salespersons shall include the last known home address, telephone number, and email address of the employees. All materials produced by the Defendants pursuant to this Order shall be redacted with respect to personal data identifiers to show only the following: Social Security number: last four digits only; taxpayer ID number: last four digits only; financial account numbers: last four digits only.

It is **FURTHER ORDERED** that the Plaintiff's request to mail the "Court-Authorized Notice" (ECF No. 27-1) and "Notice of Consent to Opt-In" (ECF No. 27-2) is **GRANTED**. The "Court-Authorized Notice" shall note that deadline for putative collective-action members to opt-in to this lawsuit is **May 21, 2012**, and that Notices of Consent must be filed (or if mailed, must be postmarked) on or before this deadline.

**DONE and ORDERED** in chambers, at Miami, Florida, on March 6, 2012.

                                                                                    **ROBERT N. SCOLA, JR.**
                                                                                    **UNITED STATES DISTRICT JUDGE**

Copies to:
*Counsel of record*